Stothoff *v.* Reed.

---

GEORGE B. STOTHOFF, guardian,

*v.*

ANNA REED and others.

1. A guardian, who was appointed at his own request, held personally responsible for the loss of his ward's legacies, where such loss was directly attributable to his want of business judgment, if not culpable negligence.

2. In this case, the guardian, immediately after having been appointed, applied to the executor in reference to the ward's legacy. The executor had, by a covinous sale to himself, become possessed of a large part (a farm) of the testator's real estate, on which he had given a mortgage to the widow for a large sum of money to secure to her an annuity given to her by the will (with power to spend the principal), for security for the legacy, not for payment, and received from the executor a second mortgage therefor, which he took in his own name and not as guardian. The widow died, the executor (her son) became her administrator, and as such sold the mortgage given to her and wasted the money. To prevent a foreclosure on that mortgage, the guardian took the title to the farm in his own name, and not as guardian. According to the evidence, he might have collected, without recourse to the farm, at least a considerable part of the legacy when he took the mortgage, and he might, in equity, have set aside the sale of the farm to the executor as fraudulent. He never paid any attention to the first mortgage; the principal of it was assets of the testator and applicable to the legacy, and so, too, was another piece of property (a house and lot) in which part of the legacy to the widow was invested, but he permitted both to be wasted and lost to the testator's estate, and, therefore, to his ward as legatee. On filing his account, he claimed credit for the investment of the legacy in the farm, which, however, was not worth the legacy.—*Held*, that his conduct was characterized by such want of ordinary business prudence, if it did not, indeed, exhibit supine negligence, as to make him chargeable with the legacy.

Stothoff *v.* Reed.

Bill for relief. On final hearing on pleadings and proofs.

*Mr. J. T. Bird* and *Mr. E. R. Bullock*, for complainant.

*Mr. W. D. Holt*, for defendants.

THE CHANCELLOR.

The complainant asks the aid of equity to relieve him from paying the amount of two legacies given to the defendant Anna C. Reed (formerly Anna C. Chamberlin) and Jonathan H. Chamberlin, who were his wards. Jonathan H. Chamberlin (father of Anna), late of the county of Mercer, deceased, died in February, 1869. By his will, dated in January of that year, he gave to his wife, in lieu of dower, the use of $10,000, both principal and interest, during her natural life, and all his household goods. He then directed his executors (his two sons, Lewis and John) to sell and convey all his real estate. He then gave to his granddaughter Catharine E. Chamberlin, $1,500; to his grandson Jonathan H. Chamberlin, $500, and to his son Joseph, his watch, his buggy-wagon and the choice of his horses; and then ordered that, after paying his debts and those legacies, the residue of his estate, and so much as might remain at his wife's decease of the sum left for her use, should be equally divided between his children, Lewis, John, Isaac, Edward, Joseph, Electa and Anna.

The executors sold all the real estate, but part of it, the testator's homestead, a farm of about one hundred and forty acres, was really bought in by Lewis at $100 an acre. It was struck off to one Muirheid for Lewis, and he conveyed it to the latter accordingly. Of the legacy of $10,000 given for the benefit of the widow, $7,000 were secured by a mortgage given by Lewis to her on that farm, and the rest of it was invested in a house and lot bought for her, and the title whereto seems to have been taken by her. At her death the principal of the mortgage was intact and the house and lot were unsold. By the provisions of the will, both the

mortgage and the house and lot, under the circumstances, constituted part of the residue of the testator's estate. Very soon after the widow's death, the complainant, in behalf of Anna and the grandson Jonathan, neither of whom had a guardian, went to Lewis to ascertain the condition of their legacies, and was informed by him that those legacies, with $1,000 of Electa's legacy and $2,000 of Isaac's legacy, "were in the homestead farm;" that is, that they were to be paid by Lewis out of the $14,000 he had agreed to pay for the farm. The complainant then asked him if he would be willing to give a mortgage to secure the legacies of Anna and Jonathan, to which he replied that he would. The complainant then took out letters of guardianship of the persons and estates of Anna and Jonathan, who were then both minors, and obtained the mortgage from Lewis for $5,112.21, with interest, to secure the amount due Anna, $4,612.21, and the $500 legacy to Jonathan. The mortgage was given January 5th, 1872, and became due on the 1st of January, 1873.

In April, 1873, Lewis, who had taken out letters of administration of his mother's estate, sold and assigned the $7,000 mortgage and converted the proceeds to his own use. Subsequently and on the 28th day of June, 1875, proceedings for foreclosure having been instituted on that mortgage, the complainant took title from Lewis for the farm. He took the mortgage for the legacies in his own name individually, and not as guardian, and, as guardian of Anna, executed a release to Lewis, as executor, by which he acknowledged that he had received from the latter the sum of $4,612.21, on account of her share under the will, and thereby absolutely discharged him therefrom. He took the deed for the property also in his own name individually, and not as guardian, and accepted it expressly subject to both the $7,000 mortgage and interest, and the mortgage for the legacies. The consideration expressed in it was $13,250. Lewis Chamberlin, in his second account as

executor, prays allowance for the amount of the two legacies as having been paid by him.

In 1873, the complainant filed his account as guardian of Anna, and in it prayed allowance for $4,729.07 as due on the bond and mortgage taken from Lewis for the legacies. The mortgaged premises will not now sell for enough to pay that mortgage, in addition to the $7,000 mortgage.

The complainant, in view of the exceptions filed by Anna to his account, by which she seeks to charge him with the whole amount of her legacy and the interest thereon, filed his bill for relief, praying that he may be permitted to account in this court as guardian of Anna and Jonathan, and that the farm may be sold and their interest therein thus ascertained in discharge of his liability.

The complainant seems to have exercised but little discretion, and to have been guilty of very great negligence. When he took the mortgage for the legacies, he might, for aught that appears, have obtained the money. The conveyance of the farm to Lewis might have been set aside as fraudulent. But the complainant did not ask for or seek to get the money. He asked only for a mortgage. The mortgage which he got might have been made a perfect and absolute security. When he took it, the $7,000 mortgage was, in equity, the property of the estate of the testator, for the widow was dead. He might have compelled the collection of the money due upon it for the benefit of the estate. He, however, took no measures in reference to it.

On the other hand, he permitted Lewis to sell the mortgage, as the administrator of his mother, and convert the proceeds to his own use. The house and lot, in like manner, were, in equity, the property of the testator's estate, but the complainant does not appear to have taken any steps to secure them for it. Lewis, at the time when he gave the complainant's mortgage, might have been compelled to pay the money. And even when the mortgage became due, he might have been compelled to pay it, and part of it, at least, might have been collected out of his property other than

the mortgaged premises. Nor did the complainant even take pains to see that the interest on the $7,000 mortgage was kept down. He did not look after that encumbrance until constrained to do so by proceedings for foreclosure of it in 1875, two years after his mortgage became due.

In taking the mortgage for the amount of the legacies in his own name individually, not to speak of his subsequent action in taking the title for the property in his own name in like manner, subject to that mortgage, he became, *prima facie* at least, liable for the legacies. His conduct in regard to them has been such as to lead to the conviction that, if they are lost, it has been through his supine and culpable negligence and want of business judgment. It seems clear that, had he exercised ordinary business sagacity and common prudence, he would not now be in this court asking relief from liability for the loss of the trust moneys, the care and management of which he voluntarily assumed. He is entitled to no relief.

The bill will be dismissed, with costs.